IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARY LOU SPENCER, | ) | CASE NO. 5:13 CV 1593 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

# Introduction

**A.   Nature of the case and proceedings**

Before me[1] is an action by Mary Lou Spencer under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and

---

[1] ECF # 17. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 13.

[4] ECF # 22.

[5] ECF # 7.

procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

**B.     Background facts and decision of the Administrative Law Judge ("ALJ")**

Spencer, who was 49 years old at the time of the hearing before the ALJ,[11] is a high school graduate with two years of college[12] who previously worked as a retail cashier/stocker and as a warehouse worker.[13]

The ALJ, whose decision became the final decision of the Commissioner, found that Spencer had the following severe impairments: fibromyalgia; trochanteric bursitis; mild degenerative disc disease of the lumbar spine; bilateral L5 radiculopathy; osteoarthritis of the left shoulder; bilateral epicondylitis; bilateral plantar fasciitis; and depressive disorder without psychosis.[14]

---

[6] ECF # 16.

[7] ECF # 20 (Spencer's brief); ECF # 21 (Commissioner's brief).

[8] ECF # 21-1 (Commissioner's charts); ECF # 20-1 at 3-6 (Spencer's charts).

[9] ECF # 20-1 at 1-2 (Spencer's fact sheet).

[10] ECF # 24.

[11] Transcript ("Tr.") at 22.

[12] *Id.* at 19.

[13] *Id.* at 22.

[14] *Id.* at 15.

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Spencer's residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following additional limitations. The claimant can stand for four hours per workday but total walking and standing could be up to six hours per workday and the individual would be able to sit or stand alternatively provided that the person would not be off task more than ten percent of the work period. The claimant's ability to push and pull is unlimited except she can only occasionally use foot controls. The claimant can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. the claimant can occasionally bend, stoop, and kneel. The claimant is limited to jobs that can be performed while using a hand-held assistive device for uneven terrain or prolonged ambulation. Any work cannot involve any rapid production rate or pace work. The work must be limited to simple, routine, and repetitive tasks. The work may involve only simple, work-related decisions with few workplace changes.[15]

The ALJ decided that this residual functional capacity precluded Spencer from performing her past relevant work as a retail cashier/stocker and a warehouse worker.[16]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Spencer could perform.[17] The ALJ, therefore, found Spencer not under a disability.[18]

---

[15] *Id.* at 18.

[16] *Id.* at 22.

[17] *Id.* at 23.

[18] *Id.*

### C. Issues on judicial review and decision

Spencer asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, although Spencer presented five alleged errors in the ALJ's decision,[19] those arguments can be distilled into the following issues for judicial review:

- The ALJ assigned the opinion of Spencer's treating physician, Dr. Kumar, little or no weight. Did the ALJ properly analyze and articulate with respect to Dr. Kumar's opinion?

- The ALJ found Spencer's statements about her pain and limitations less than credible. Does substantial evidence support that finding?

- The ALJ found that the VE's testimony was consistent with the DOT. Does substantial evidence support that finding?

---

[19] ECF # 20 at 2. Specifically, the five arguments set forth by Spencer in her brief are:
1. The ALJ's assertion that plaintiff's fibromyalgia-related pain is not supported by positive trigger point examinations is false. In fact, positive trigger points documenting severe fibromyalgia are documented in the record on numerous occasions.
2. The ALJ erred when she failed to adequately assess the effect of plaintiff's pain in her ability to work, because she improperly minimized the effects of her fibromyalgia, insinuating that evidence backing a proper diagnosis did not exist and finding the plaintiff's claims not credible.
3. The ALJ erred when she failed to give appropriate weight to the opinions of plaintiff's treating source, who factored into his assessment that she had additional limitations related to fibromyalgia pain, which the ALJ improperly minimized.
4. At step five of the sequential evaluation process, in addition to failing to include all of Ms. Spencer's limitations in his RFC finding, he failed to include even those present in the hypothetical question he posed to the vocational witness. Moreover, he failed to elicit any explanation of the conflicts between the job information contained in the Dictionary of Occupational Titles and the vocational witness's testimony.
5. As a result of the above errors, the ALJ's residual functional capacity finding ("RFC") and concomitant hypothetical question to the vocational expert are deficient as a matter of law.

For the reasons that follow, I will conclude that because the ALJ's treatment of the opinion of Dr. Kumar did not comply with the applicable regulations, the matter must be remanded, thus potentially requiring reconsideration of any decision concerning Spencer's credibility in light of the re-examination of Dr. Kumar's opinion and also potentially requiring reformulation of the proper hypothetical to be posed to the VE.

## Analysis

**A.    Standards of review**

*1.    Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALAS in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[20]

---

[20] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[21] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[22]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

2.   *Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[23]

---

[21] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[22] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[23] 20 C.F.R. § 404.1527(d)(2).

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[24]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[25] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[26]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[27] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[28] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[29] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[30]

---

[24] *Id.*

[25] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[26] *Id.*

[27] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[28] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[29] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[30] *Id.* at 535.

In *Wilson v. Commissioner of Social Security*,[31] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[32] The court noted that the regulation expressly contains a "good reasons" requirement.[33] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[34]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[35] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[36] The former confers a substantial, procedural right on

---

[31] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[32] *Id.* at 544.

[33] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[34] *Id.* at 546.

[35] *Id.*

[36] *Id.*

the party invoking it that cannot be set aside for harmless error.[37] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[38]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[39] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[40] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[41] *Blakley v. Commissioner of Social Security*,[42] and *Hensley v. Astrue*.[43]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[44] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent

---

[37] *Id.*

[38] *Id.*

[39] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[40] *Id.* at 375-76.

[41] *Rogers*, 486 F.3d at 242.

[42] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[43] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[44] *Gayheart*, 710 F.3d at 376.

with other substantial evidence in the administrative record.[45] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6) and §§ 416.927(d)(2)(i)-(ii), (3)-(6).[46] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[47]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[48] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[49] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[50] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions

---

[45] *Id.*

[46] *Id.*

[47] *Rogers*, 486 F.3d at 242.

[48] *Gayheart*, 710 F.3d at 376.

[49] *Id.*

[50] *Id.*

and the treatment reports.[51] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[52]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.
>
> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[53]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[54] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[55] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[56] or that objective medical evidence does not support that opinion.[57]

---

[51] *Id.*

[52] *Id.*

[53] *Id.*

[54] *Rogers*, 486 F.3d 234 at 242.

[55] *Blakley*, 581 F.3d at 406-07.

[56] *Hensley*, 573 F.3d at 266-67.

[57] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[58] The Commissioner's *post hoc* arguments on judicial review are immaterial.[59]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[60]

- the rejection or discounting of the weight of a treating source without assigning weight,[61]

---

[58] *Blakley*, 581 F.3d at 407.

[59] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

[60] *Blakley*, 581 F.3d at 407-08.

[61] *Id.* at 408.

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[62]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[63]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[64] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[65]

The Sixth Circuit in *Blakley*[66] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[67] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[68]

---

[62] *Id.*

[63] *Id.* at 409.

[64] *Hensley*, 573 F.3d at 266-67.

[65] *Friend*, 375 F. App'x at 551-52.

[66] *Blakley*, 581 F.3d 399.

[67] *Id.* at 409-10.

[68] *Id.* at 410.

In *Cole v. Astrue*,[69] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[70]

**B.     Application of standards**

Although the ALJ found that Spencer had multiple physical impairments and depressive disorder, only the severe impairment of fibromyalgia is relevant to this case. In that regard, the ALJ adopted a somewhat extensive RFC providing generally for light work with additional physical, postural, and mental limitations. The ALJ then included in that RFC a limitation to jobs that can be performed while using a hand-held assistive device for uneven terrain or prolonged ambulation. In arriving at this RFC, the ALJ found Spencer's statements about her pain and limitations less than credible.[71] Further, he gave the opinion of Spencer's treating physician, I. Praveen Kumar, M.D., little or no weight.[72]

Beginning with the treatment of Dr. Kumar's opinion, the ALJ did not follow the analytical requirements under the applicable regulations as discussed in the *Gayheart* case. Instead, contrary to *Gayheart*, she collapsed the analysis into a single step. She made no

---

[69] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[70] *Id.* at 940.

[71] Tr. at 18.

[72] *Id.* at 20.

-14-

finding regarding controlling weight and assigned the opinion little or no weight with some effort to discuss internal inconsistencies and emphasis upon Dr. Kumar's statement that Spencer was "disabled."[73]

As is usual in these situations, the Commissioner asserts that the ALJ's decision should be read holistically and that the ALJ provided enough discussion outside the specific paragraph on weight to satisfy the requirements of the regulations.

More telling as to the ALJ's true basis for analysis, however, are statements made by the ALJ in connection with credibility. Specifically, the ALJ observes "[t]he record contains reports indicating that the claimant has presented with tenderness to palpitation at various trigger points *but the record does not make specific mention of how many trigger points have been positive*.... A report from a rheumatologist detailing how many of the 18 traditional trigger points tested positive to palpitation would have lent greater credibility to the claimant's allegations, *but again such evidence does not exist in the record*."[74] This statement does not find support in the record. Shortly before the onset date, Dr. Kumar referred Spencer to a board-certified physiatrist, Daniel Dorfman, M.D., who identified several specific tender points and diagnosed fibromyalgia.[75] Dr. Kumar also referred Spencer to a board-certified rheumatologist, Dr. Pellegrino, who diagnosed fibromyalgia and specifically noted pain in

---

[73] *Id.* at 20-21. Frequently, an ALJ seizes on the single use of the term "disabled" in a medical opinion to pronounce that the entire opinion has no weight because the medical source has arrogated to himself a function of the Commissioner.

[74] *Id.* at 19-20 (italics added).

[75] *Id.* at 314-15.

18 of 18 designated tender points.[76] The reports of Drs. Dorfman and Pellegrino were sent to Dr. Kumar.

Thereafter, for the next two years, Dr. Kumar treated Spencer based on the fibromyalgia diagnoses of Drs. Dorfman and Pellegrino, and supported by tender point tests in both cases.

That said, in the ALJ's opinion, the examinations and diagnoses of Drs. Dorfman and Pellegrino are nowhere acknowledged. Further, as stated above, the ALJ's statement of the contents of the record appears to overlook that the Dorfman and Pellegrino examinations and diagnoses actually took place.

This creates problems under the analytical framework for fibromyalgia cases that I recognized in *Swain v. Commissioner of Social Security*[77] and the Sixth Circuit adopted in *Rogers*.[78] In *Swain* I specifically explained the importance of the opinion of the treating physician to the assessment of the severity of the alleged pain and of the credibility of the claimant's statements regarding pain and limitations.[79]

In *Rogers*, the Sixth Circuit extensively discussed the opinions of the treating physicians and the ALJ's improper evaluation of those opinions under the regulations. In

---

[76] *Id.* at 474-76.

[77] *Swain*, 297 F. Supp. 2d 986, 990 (N.D. Ohio 2003).

[78] *Rogers*, 486 F.3d 234 (6th Cir. 2007).

[79] *Swain*, 297 F. Supp. 2d at 990. Dr. Pellegrino was the treating rheumatologist in *Swain*, and his opinions have figured prominently in several of my fibromyalgia decisions since.

reversing the Commissioner's decision and remanding for reconsideration of the weight assigned to the treating physicians' opinions, the *Rogers* court made the following observation:

> This required explanation, or lack thereof in this particular case, is directed to explaining not just why these opinions do not warrant controlling weight, but should also explain what weight was given the treating opinions. No such evaluation was conducted by the ALJ here, or, if it was, it is not articulated in the written decision. Because the ALJ failed to provide sufficient justification for the weight given to the opinion of Rogers's treating physicians, his decision in this regard did not meet the requirements of 20 C.F.R. § 416.927 and, therefore, cannot serve as substantial evidence.[80]

This statement tracks closely the analytical framework underscored by the court's decision in *Gayheart*.

But discussing the weight assigned, the ALJ here focuses on inconsistencies and essentially makes the observation that given the limitations opined by Dr. Kumar, Spencer "would not be able to pick up a pencil or answer the telephone for two-thirds of the workday" and "must spend the majority of her day lying down."[81] This appeal to so-called commonsense misses the point. The record documents that Spencer's fibromyalgia caused her severe pain, limiting her ability to sustain a normal workday, which is the relevant point. Under *Rogers* and *Swain*, this limitation on sustained functioning cannot be refuted merely by asserting the lack of objective medical evidence. As is well known, the effects of fibromyalgia often cannot be discussed by objective tests but manifest themselves as pain,

---

[80] *Rogers*, 486 F.3d at 246.

[81] Tr. at 20-21.

which is frequently subjective. Thus, in making the decision, Spencer's credibility and the proper weight given to her treating physician's opinion are significant.

In this case, the failure of the ALJ to recognize the evidentiary support for Dr. Kumar's opinion is merely the first step of a misanalysis that extends to the various deficiencies that are detailed above. The matter must be remanded so that a proper analysis may be undertaken. Then, with a supportable determination of the weight to be given to Dr. Kumar's opinion in hand, the remaining issues of whether Spencer's allegations of pain are credible in light of that weight and the scope of the proper hypothetical, may both be reconsidered and ascertained.

## Conclusion

For the reasons stated above, I find that substantial evidence does not support the finding of the Commissioner that Spencer had no disability. Therefore, the denial of Spencer's applications is reversed and the matter remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: September 11, 2014                              s/ William H. Baughman, Jr.
                                                       United States Magistrate Judge